## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| C.O. b/n/f IVETTE MENDOZA AND | § | |
| DAVID ORTEGA AND IVETTE | § | |
| MENDOZA AND DAVID ORTEGA, | § | |
| *individually,* | § | |
| PLAINTIFFS, | § | |
| | § | **CIVIL ACTION NO.: 1:19-cv-860** |
| v. | § | **JURY DEMAND** |
| | § | |
| ROUND ROCK INDEPENDENT | § | |
| SCHOOL DISTRICT and YMCA | § | |
| OF GREATER WILLIAMSON | § | |
| COUNTY | § | |
| Defendants. | § | |

### PLAINTIFFS' AMENDED COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT**

**NOW COMES** C.O. B/N/F Ivette and David Mendoza, (hereinafter collectively referred to as Plaintiffs), brings this their *Amended Complaint,* pursuant to Federal Rules of Civil Procedure 15(a), alleging that alleging that the Round Rock Independent School District ("RRISD" or "the School District") and the YMCA of Greater Williamson County ("the Y" or the "YMCA"), violated the various rights of C.O-M., all as more specifically pled below. Plaintiffs' reserve the right to re-plead this *Original Complaint* if new claims and issues arises upon further development of the facts, and as permitted by law. In support thereof, Plaintiffs would respectfully show the following:

### I. INTRODUCTION

1.  On October 25, 2018 a Class Action Lawsuit was filed against the Round Rock Independent School District, Case # 1:18-cv-00922-LY in the United States District Court, Western District, Austin Division by Student Jane Doe alleging that the School District had a pattern,

practice and custom of losing children, leaving them unattended in public areas.  The Class Members filed a cause of action based violations of the *Due Process Clause* of the 14th Amendment to the United States Constitution, as contemplated by 42 U.S.C. Section 1983. Additionally, they based a claim upon Title IX of the Educational Acts of 1972 ("Title IX"), 20 U.S.C. §1681 et seq.

2.      C.O-M.  is a  seven year old child, who attends Teravista Elementary ("TVE") within the RRISD. On at three occasions prior to the filing of the Class Action Lawsuit she was left unsupervised by RRISD and an on-site YMCA afterschool care program's personnel. On the last occasion, well after the Class Action Lawsuit was filed and after the School Board was put on actual notice of the problem, she was again left by herself, this time for about half an hour, crying, alone and shivering in the winter cold.  She continues to experience trauma because of these incidents.  This *Complaint* sets forth a claim against the Defendants for violations of her civil rights pursuant to the 14th Amendment of the United States Constitution as contemplated  42 U.S.C. §1983.

## II. <u>JURISDICTION</u>

3.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the Constitution, Laws and Rules of the United States.

4.      Further, this Court has jurisdiction pursuant to 42 U.S.C. Section 1983 and 1988, so as to also to award attorneys' fees, reimbursement of expert fees and other related costs to Plaintiffs.

5.      Additionally, this Court has supplemental jurisdiction over various state and common law claims pursuant to 28 U.S.C. §1367.

## III. <u>VENUE</u>

6.      Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Western District of Texas, Austin Division.

## IV.  PARTIES

7.      C.O-M. is a citizen of the State of Texas and Williamson County, and during the time of the incidents giving rise to this Complaint, she resided with her natural parents, Ivette Mendoza and David Ortega.

8.      Ivette Mendoza and David Ortega are likewise both residents of the State of Texas and of Williamson County. They live in Round Rock, Texas.

9.      Defendant Round Rock Independent School District is organized under the laws of the State of Texas and at all relevant times relative to this proceeding were responsible for the implementation of relevant federal laws and the rules promulgated thereunder, as well as other statutory and constitutional mandates, including but not limited to the care, management and control of all business within their jurisdiction, so that students like C.O-M. are treated commensurate with the law.  Defendant Round Rock ISD has been served with summons by and through its superintendent of schools, Steve Flores, Ph.D., at 1311 Round Rock Ave., Round Rock, TX 78681.   Plaintiffs received notice through the CMF/ECF system that they are represented through the Law Firm of Escamilla and Poneck, LLP, 700 North Mary's Street, Suite 850, San Antonio, Texas 78205.

10.     The YMCA of Greater Williamson County ("The Y") is a 501(c)(3) organization chartered by the YMCA of the USA. The Y is organized under the laws of the State of Texas and at all relevant times relative to this proceeding was responsible for the implementation of relevant federal and state laws and promulgated thereunder regarding the provision of after

school services. The Defendant YMCA of Greater Williamson County may be served with summons by and through its President/CEO, Jeff Andresen, at YMCA of Greater Williamson County Main Office, P.O. Box 819, Round Rock, TX 78680.

## V. <u>FACTUAL RESUME</u>

A.    ABOUT C.O-M. AND FAMILY

11.    C.O-M. was born on April 13, 2012.

12.    C.O-M. is now seven years old (7). She most recently attended Teravista Elementary ("TVE") in Round Rock ISD.

13.    Beginning in the 2017-2018 school year, C.O-M was scheduled to attend the YMCA of Greater Williamson County's on-campus after school care program herein called the "YMCA" on Tuesdays, Thursdays and Fridays. She did not attend on Mondays and Wednesdays because her parents registered her to attend the Round Rock Karate Academy on those days.

B.    THE ROUND ROCK ISD AND THE YMCA AFTERSCHOOL CARE PROGRAM

14.    The Round Rock Independent School District has long had and re-authorized policies and procedures related to Student Welfare. The YMCA afterschool program operates after school on each participating school's campus until 6:30pm and all day for most school holidays. It is set up only for young children in elementary school in Kindergarten through 5th grade.

15.    The YMCA Afterschool program functions as follows:

    a.    The school day ends at 2:40 and the students are released.

    b.    The students that are enrolled in the afterschool are escorted to the school cafeteria by a teacher with the RRISD.

    c.    YMCA Afterschool staff checks the students in, then parents receive an automated

email by about 3:05pm confirming that their child is present and checked in. Parents
are also to receive an email confirming their child was checked out at the end of the
day and calls when their child does not check in on a day the child is scheduled to
attend the afterschool care program.

D.    THE FALL OF 2017

16.    As noted above, when the elementary school day ends at 2:40pm, the teachers gather up the
students and escort them to either the cafeteria for those scheduled to attend the YMCA's
afterschool program, or to one of two bus areas for either students attending private daycare
or those going home.  Others will be directed to a pickup line for parents who come to the
school to pick their child up at the end the day.

17.    On one Friday during the fall of 2017, the TVE teacher sent C.O-M. home on the bus even
though she was scheduled to attend the afterschool program. Normally, C.O-M. was met at
the bus stop by her mother. Luckily the "usual" bus driver did not see Ms. Mendoza at the
stop to receive C.O-M., and kept her on the bus. The driver took C.O-M. back to the school.
Both the school and the afterschool program failed to inform Ms. Mendoza of this incident.
Later that day, C.O-M. told her mother about the incident.

18.    Immediately after being informed of this incident, Ms. Mendoza had a meeting with Kelly
Johnson, C.O-M's Kindergarten Teacher, the Vice-Principal and Michael Wakefield,  the
TVE Principal. The principal was apologetic and noted C.O-M. was apparently not the first
child who had been lost, when he responded and stated, "This happens from time to time."

19.    Also during this meeting Ms. Mendoza expressed her concern that there was no cogent
system for coordinating and communicating the time frame for checking in the children,
from the time they get released from the teachers until they are checked in with the

afterschool program. The Director of the afterschool program (Clarence) promised that they would develop a system to eliminate these kinds of events from happening again. Principal Wakefield also promised that he would make sure C.O-M. was not lost again.

E.     MRS. MENDOZA DEVELOPS A COMPUTER PLAN TO PREVENT THIS PROBLEM FROM OCCURRING AGAIN

20.     Ms. Mendoza then designed a system (a "Macro Spreadsheet") to link the RRISD school attendance with the children that attended the YMCA afterschool program, so as to forecast and track children who would, and who would not, be attending the program on any particular day.  It was offered free of cost to both the Teravista Principal Gary Wakefield as well as during the process of checking in and out that included parent notification and provided it to both the RRISD and the YMCA staff. A bit about Mrs. Mendoza is important here. She is uniquely qualified to craft such a system.  She is a data analyst for Tangoe Inc., which provides Telecommunications and Expense Management services. Among the accounts she handles, is a multimillion dollar customer who has over 450,000 lines of services. She is, in fact, the point of contact for these type of VIP Orders. Her duties for these accounts include analyzing data to identify trends that could potentially generate profits from the services provided and then generating custom reports and presentations on a monthly and quarterly basis. She is also tasked with identifying areas of efficiency in order to provide avenues for improvement, monthly inventory updates for carrier accounts supported by her clients, and implementing binding contracts for multiple carriers and 3rd party vendors in both domestic and international markets.  In short, she analyzes huge amounts of data on a daily basis that require the construction of macros that are much more complex that the one she proposed to design and construct for the RRISD, the Teravista

Elementary School and the afterschool care program.

21.     The program Ms. Mendoza developed was simple.  It coordinated and communicated the fact that attendance was taken in the morning hours at the Teravista Elementary School (as well as all schools in the RRISD) and ran it against a list of children signed up to attend the afterschool program on any given day.  This process would definitively inform the YMCA how many (and which particular) children will attend on any given day. The YMCA would then be able to confirm with the Parent or Guardian of any child that they did not come to school and that they are not going to show up afterschool.  Of course, if a student who was signed up to attend the YMCA did not show up there would be an immediate communication with the parent and all necessary participants in the program, to guard against the "lost student."

22.     This offer was extended to TVE Principal Michael Wakefield, the afterschool care program Coordinator, Kelly Johnson (teacher), and also the Vice Principal for the TVE. Both the Principal and the then afterschool care program's coordinator were initially verbally receptive.  Nevertheless, she never received a call back from the RRISD or the afterschool care program in order to arrange a time to set up a meeting to discuss the issue and Mrs. Mendoza's solution.  Obviously, it was never implemented. Luckily, the problem, at least for C.O-M.,  did not re-occur for the rest of that school year but it did the next.

F.      THE FALL OF 2018

23.     One day in September of 2018, C.O-M. was scheduled to attend the afterschool care program Her teacher, Lisa Sanford, again sent her home on the bus even though she was scheduled to attend the program.  Again, when the bus driver (Renee) did not see Ms. Mendoza at the stop to receive C.O-M., the driver returned C.O-M.. to the school. Ms. Mendoza spoke with

the bus driver, who told her that Ms. Sanford put C.O-M on the bus.

24.     Both the school and the afterschool care program again failed to inform Ms. Mendoza of this incident. In fact the program sent an email to Ms. Mendoza indicating C.O-M. was there, even though she was not.

25.     Ms. Mendoza emailed Lisa Sanford, C.O-M.'s teacher, who was apologetic in her response and assured the family that she would review things but as the following will show, she did not.

26.     In fact, and just a few weeks later in October of 2018, a TVE teacher again sent C.O-M. home on the bus even though she was scheduled to attend the YMCA. Again, when the bus driver did not see Ms. Mendoza at the stop to receive C.O-M., so C.O-M. was safely returned to the school.

27.     Despite the fact that her daughter was on the bus at the time, Ms. Mendoza received the automated afterschool care program email confirming her daughter's presence at the program.

28.     After this incident, C.O-M.'s parents went to the school and spoke with Ms. Sanford. Ms. Sanford was once again apologetic and once again assured the family that she would look into things, but as the following will show, she did not.

G.     THE INCIDENT MADE THE BASIS OF THIS LAWSUIT

29.     As noted above, in and around the same time as the third incidence of C.O-M. being lost between the RRISD, the YMCA and a RRISD School Bus, on October 25, 2018 a Class Action Lawsuit was filed against the School District.  It was given the Case # 1:18-cv-00922-LY and was filed in the United States District Court, Western District, Austin Division alleging that the School District had a pattern, practice and custom of losing

children and leaving them unattended in public areas. The Class Members filed a cause of action based violations of the *Due Process Clause* of the 14th Amendment to the United States Constitution, as contemplated by 42 U.S.C. Section 1983. Additionally, they based a claim upon Title IX of the Educational Acts of 1972 ("Title IX"), 20 U.S.C. §1681 et seq..

30.. On December 14, 2018, it was arranged for C.O-M. to attend the YMCA. It was particularly cold that day. It was especially important that the transfer of C.O-M. after her final class of the day to the afterschool care program be done correctly, as Ms. Mendoza was out of town that day. The plan was for Mr. Mendoza to pick up C.O-M. up from the YMCA before 5:00pm.

31. On that day, yet again, a TVE teacher sent C.O-M. home on the bus even though she was scheduled to go to the afterschool care program.

32. The bus arrived at the bus stop near her C.O-M.'s home at about 3:05 pm. This time, however, there was a substitute bus driver who was not familiar with the children or the route. Instead being returned to school as she had been previously, C.O-M. was left.

33. After about 30 minutes of sitting outside, alone, a neighbor happened look outside and see C.O-M, who was by this time screaming and crying uncontrollably. The neighbor, worried that she was clearly alone and petrified, invited C.O-M, in to her home. However, since this neighbor was not one of the "trusted neighbors" C.O-M. refused to go inside the house. As time went by, the same neighbor insisted that she came in to the house so that she would not be cold. C.O-M. eventually accepted, but remained by the window awaiting the arrivak of her parents or a "trusted neighbor".

34. She had to wait approximately one hour before one of the trusted neighbors, Maribel Antuna arrived; C.O-M. asked the neighbor if she could go to their house. Mrs. Antuna immediately

reached out to Ms. Mendoza to let her know C.O-M was with her; this was at approximately 4:00 p.m.

35.   Again, for  now the fourth time, neither TVE staff nor afterschool care staff, contacted C.O-M.'s parents.

36.    Ms. Mendoza called Wakefield but received no response.

37.   C.O-M.'s parents later met with Principal Wakefield and Ms. Sanford. Wakefield once again, apologized and restated "This happens from time to time".

H.   C.O-M. HAS EXPERIENCED SIGNIFICANT  TRAUMA BECAUSE OF THESE INCIDENTS

38.   At the time of Immediately following this last incident, C.O-M. was a regularly developing child, having reached social interaction and adaptive milestones on or ahead of the pace of average children. Following this last incident C.O-M. has experienced a marked regression in her social functioning and emotional development.  She now suffers from regular instances of incontinence.  She also experiences bouts of anxiety, sometimes to the point of vomiting.  Of course, she also has a fear of attending school and leaving her mother during the day.  She cannot sleep in her bed anymore and displays extreme clinging to her parents to the exclusion of peers.

I.   SUMMARY

39.   If the Round Rock Independent School District by and through its representative, Teravista Elementary School Principal Gary Wakefield, had responded to the complaints of Mrs. Mendoza in a timely manner, then surely the incident where C.O.-M. was left alone could surely have been avoided.  In fact, it is likely that Student Jane Doe, named member of the Class Action Lawsuit noted above, likewise would have been kept safe and her lawsuit

would never have occurred.

40.   Additionally, if the YMCA had responded to the complaints of Mrs. Mendoza in a timely manner, then surely the incident where C.O-M. was left alone could surely would have not occured.

41.   The failure of each Defendant is particularly egregious in light of the fact Mrs. Mendoza had developed a simple program that would have avoided the incident made the basis of this complaint.

42.   The School Board for the Round Rock Independent School District was on notice that students like C.O-M. were at risk of being lost.  Nevertheless the Board failed to do anything to address this concern. C.O-M. was injured because of such failure.

## VI.  STATE ACTION BY THE ROUND ROCK ISD

43.   Plaintiffs incorporate by reference all the above-related paragraphs, as well as those below, with the same force and effect as if herein set forth. In addition, each below reference paragraph incorporates by reference the one above it.

44.   The Round Rock ISD Defendant receives federal monies.  As such, all the acts and omissions of this Defendant occurred under *Color Of Law.*

## VII . UNCONSTITUTIONAL POLICIES, PROCEDURES, PRACTICES & CUSTOMS

45.   During the relevant time period contemplated by this cause of action, the Round Rock ISD Defendant had an actual practice and custom of conscious and deliberate indifference to the federal law, federal rules, directives from federal executive agencies, and their own School Board policies and procedures in regard to maintaining the safety of C.O-M. when it was their duty to keep her safe.

46.   Such acts and omissions of the School District, and failure to keep her safe, violated her civil

rights pursuant to the 14th Amendment to the United States Constitution.  Moreover, such failures were a moving force causing the injuries stated above.  She seeks recovery of such injuries pursuant to 42 U.S.C. §1983.

47.   Specifically, Plaintiffs allege that the District violated C.O-M.'s substantive constitutional rights of life, liberty, privacy, bodily integrity and happiness, all pursuant to the *Due Process Clause* of the 14th Amendment for liberty, and enforced by 42 U.S.C. §1983.

48.   Additionally, and in a related vein, the District violated C.O-M.'s procedural *Due Process* rights also pursuant to  14th Amendment and enforced by 42 U.S.C. §1983.

49.   In addition, and in the alternative the District violated C.O-M.'s rights also pursuant to the *Equal Protection Clause* of the 14th Amendment and enforced by 42 U.S.C. §1983.

50.   In addition, and in the alternative, this School Board obviously failed to correctly supervise staff in regard to the laws, regulations and directives as noted above. Such failures, in addition and in the alternative to the above, rise to the level of a separate violation of the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

51.   Last; in addition and in the alternative to the above, this School Board obviously has failed to train staff in regard to the laws, regulations and directives as noted above. Such failures, in addition and in the alternative to the above, rise to the level of a separate violation of the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

## VIII.   RATIFICATION AND RESPONDEAT SUPERIOR

52.   The School District ratified the acts, omissions and customs of School District personnel and staff.

53.   As a result, the School District responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of C.O-M. as contemplated by the theory of *Respondeat Superior*.

## X. <u>PROXIMATE CAUSE</u>

54.   Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

55.   Each and every, all and singular of the foregoing acts and omissions, on the part of the School District Defendant constitute a direct and proximate cause of the injuries and damages set forth herein.

## XI.  <u>DAMAGES</u>

56.   Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

57.   As a direct and proximate result of all the Defendants' conduct, C.O-M. and her parents have suffered injuries and damages, for which she is entitled to recover within the jurisdictional limits of this court, including but not limited to:

    a.   Mental anguish in the past;

    b.   Mental anguish in the future;

    c.   Physical injuries in the past;

    d.   Stigma;

    e.   Loss of educational opportunities;

    f.   Loss of Consortium and

    g.   Various out-of-pocket expenses incurred by their parents but for the acts and omissions of the Defendants, jointly and severally.

## XII.  PUNITIVE DAMAGES

58.     Plaintiffs reasonably believe the acts and omissions of Defendant Round Rock ISD School

Board and the YMCA of Greater Williamson County satisfy criteria for violations of civil

rights and discrimination because the facts shock the conscience, thus satisfying criteria for

punitive damages, as contemplated by Section 1983.

## XIII. SPOLIATION OF EVIDENCE

59.     Plaintiffs hereby requires and demands that the Defendants preserve and maintain all

evidence pertaining to any claim or defense related to the a actions and violations made the

basis of this petition and request for due process or the damages resulting therefrom,

including statements, photographs, videotapes, audiotapes, surveillance, security tapes,

business or medical records, incident reports, telephone records, emails, text messages,

electronic data/information, and any other evidence regarding the assault or other violations

set forth herein.

60.     Failure to maintain such items will constitute "spoliation" of evidence, which will

necessitate use of the spoliation interference rule—an inference or presumption that any

negligent or intentional destruction of evidence was done because the evidence was

unfavorable to the spoliator's case.

## XIV. ATTORNEY FEES

61.     Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth

herein.

62.     It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit. Upon

judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to under 42

U.S.C. §1983, 1988(b) and 42 U.S.C. § 2000d et seq.

## XV. <u>DEMAND FOR JURY TRIAL</u>

63.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues

in this matter.

## XVI. <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment against both the

Round Rock Independent School District the YMCA of Greater Williamson County, in the manner

and particulars noted above, and in an amount sufficient to fully compensate them for the elements

of damages enumerated above, judgment for damages, recovery of attorneys' fees and costs for the

preparation and trial of this cause of action, and for its appeal if required, pursuant to 42 U.S.C.

§1983 and 1988 and 42 U.S.C. § 2000d et seq.; together with pre- and post-judgment interest, and

court costs expended herein, as well as the equitable issues noted above, and for such other relief

as this Court in equity, deems just and proper and for such other relief as the Court deems just and

proper in law or in equity.

Respectfully submitted,

/s/ Anthony O'Hanlon
Mr. Anthony O'Hanlon, Esq.
Anthony O'Hanlon, P.C.
aohanlon@somlaw.net [Email]
State Bar. No. 15235520
111 South Travis Street
Sherman, Texas 75090
(903) 892-9133 [Telephone]
(903) 957-4302 [Facsimile]
LEAD COUNSEL; and

Mr. Martin J. Cirkiel, Esq
marty@cirkielaw.com [Email].
State Bar No.: 00783829
Federal ID No.  21488

Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]

## <u>CERTIFICATE OF SERVICE</u>

Escamilla Poneck
Phillip Marzec
700N St. Mary's, Suite
850
San Antonio, Texas
78205
(210) 225-0001– Telephone
[pmarzek@escamillaponeck.com](mailto:pmarzek@escamillaponeck.com) - Email


*<u>s:// Martin J. Cirkiel</u>*
Martin J. Cirkiel


Original Complaint                                                                                              17