## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **C.O. b/n/f IVETTE MENDOZA and** | § | |
| **DAVID ORTEGA, and IVETTE** | § | |
| **MENDOZA and DAVID ORTEGA,** | § | |
| **individually** | § | **Case No. A-19-CV-0860-LY** |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ROUND ROCK INDEPENDENT** | § | |
| **SCHOOL DISTRICT and YMCA OF** | § | |
| **GREATER WILLIAMSON COUNTY** | § | |
| *Defendants* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO:    THE HONORABLE LEE YEAKEL**
**          UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Round Rock Independent School District's ("RRISD") Motion to Dismiss (Dkt. 36) and Defendant YMCA of Greater Williamson County's ("YMCA") Motion to Dismiss (Dkt. 37), both filed April 3, 2020, and the associated response and reply briefs. On April 28, 2020, the District Court referred the Motion and related filings to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.    Background

Plaintiffs C.O.,[1] a student at Teravista Elementary School ("TES") in the Round Rock Independent School District ("RRISD"), and her parents, Ivette Mendoza and David Ortega, allege

---

[1] The parties also refer to C.O. as C.O-M and C.O.-M.

1

that RRISD and YMCA violated C.O.'s constitutional rights by failing to protect her while she was in their custody.

C.O., who was six years old when the events giving rise to this lawsuit occurred, attended a YMCA after-school program at TES three days a week while her parents worked. After school, RRISD employees escorted students enrolled in the YMCA program to the school cafeteria, where YMCA staff checked in the children and supervised them until their parents picked them up. Plaintiffs allege that on four occasions, RRISD employees failed to take C.O. to the YMCA program and mistakenly sent her home on the school bus instead. On three of these occasions, the regular school bus driver realized the mistake after noticing that C.O.'s mother was not at the bus stop to meet C.O. and drove her back to the school. On the fourth occasion, on December 14, 2018, C.O. was left at her bus stop by a substitute driver who did not know that C.O.'s mother usually met her at the bus stop. Plaintiffs allege that C.O. was alone for approximately thirty minutes before a neighbor saw her, scared and crying, and intervened.

On September 3, 2019, Plaintiffs filed this lawsuit, alleging that RRISD violated C.O.'s due process and equal protection rights under the Fourteenth Amendment, and that RRISD ratified the acts, omissions, and customs of RRISD personnel. Dkt. 1 ¶¶ 42-54. On March 18, 2020, Plaintiffs filed their Third Amended Complaint, adding YMCA as a defendant. Plaintiffs assert § 1983 claims against RRISD and claims of breach of contract,[2] negligence, and intentional infliction of emotional distress against YMCA. Dkt. 35 ¶¶ 47-75. RRISD and YMCA each move for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

---

[2] Plaintiffs also assert a breach of contract claim against RRISD, alleging that C.O. was an intended third-party beneficiary of a contract between RRISD and YMCA.

## II.   Legal Standards

### A.  Subject Matter Jurisdiction

Federal district courts are courts of limited jurisdiction and may only exercise jurisdiction expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.

Rule 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

In ruling on a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). Dismissal for lack of subject matter jurisdiction is warranted when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014) (quoting *Ramming*, 281 F.3d at 161).

### B.  Failure to State a Claim

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.*

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced in the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.   RRISD's Motion to Dismiss

RRISD seeks dismissal of Plaintiffs' claims under Rule 12(b)(1) for lack of subject matter jurisdiction, asserting that "Plaintiffs' suit is nothing more than a poorly disguised state-based claim dressed up and filed as a federal lawsuit." Dkt. 36 at 2-4. RRISD contends that the Court lacks subject matter jurisdiction because Plaintiffs fail to allege a violation of a constitutional right. This argument, however, goes to the merits of Plaintiffs' constitutional claims, not the Court's

jurisdiction. Accordingly, RRISD's Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) should be denied, and RRISD's arguments assessed under Rule 12(b)(6).

### A.  Section 1983 Claim

42 U.S.C. § 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

Municipal entities, including independent school districts, qualify as "persons" under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipal entities cannot be held liable for the acts of their employees under § 1983 on the theory of respondeat superior. *Id.* at 694; *see also Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 380 (5th Cir. 2007) ("A school district has no vicarious liability under § 1983. Rather, it is liable for the unconstitutional conduct of its policymakers, including persons to whom it has delegated policymaking authority in certain areas."). A municipal entity is liable only for acts directly attributable to it "through some sort of official action or imprimatur." *Piotrowski v. Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Isolated unconstitutional actions by municipal employees "will almost never trigger liability." *Id.* To invoke municipal liability, a plaintiff must identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski*, 237 F.3d at 578). Whether a government official has final

policymaking authority is a question of state law. *See Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986). Under Texas law, the final policymaking authority in an independent school district rests with the district's board of trustees. *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); TEX. EDUC. CODE § 11.151(b).

RRISD argues that Plaintiffs "have failed to allege, and the facts pleaded cannot support, that C.O-M suffered a violation of a right secured by the Constitution." Dkt. 36 at 3. RRISD also argues that, even if Plaintiffs had alleged a violation of a constitutional right, they have not shown that any of the school employees' actions were done pursuant to an official policy or custom of RRISD, as is required to invoke municipal liability under § 1983.

### 1. Plaintiffs' Alleged Constitutional Violations

Plaintiffs allege that C.O. has Fourteenth Amendment rights to bodily integrity and to "safety in and at school programs in particular." Dkt. 42 ¶¶ 22. Plaintiffs allege that RRISD's "act and omissions" in failing to keep C.O. safe, by mistakenly sending her home on the bus instead of to the YMCA program, violated her Fourteenth Amendment rights to "life, liberty, privacy, bodily integrity and happiness." Dkt. 35 ¶ 51.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. CONST. amend. XIV, § 1. "To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs must show that they have asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (internal quotation marks omitted). The Supreme Court has long recognized a substantive component to the Due Process Clause that protects individual liberty against certain

government actions, "regardless of the fairness of the procedures used to implement them." *Id.* The definition of "liberty" includes privileges expressly enumerated by the Bill of Rights and the fundamental rights implicit in the concept of ordered liberty. *Id.*

RRISD argues that Plaintiffs have failed to allege a violation of a constitutional right because "[a] school district's failure, absent a special relationship, to protect an individual from harm does not constitute a violation of any Constitutional right." Dkt. 36 at 7. In support of their argument that Plaintiffs must demonstrate that C.O. had a "special relationship" with RRISD in order to allege a violation of a constitutional right, RRISD relies on *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849 (5th Cir. 2012). RRISD's reliance on *Covington* is misplaced.

In *Covington*, Jane Doe, a nine-year-old student, was checked out from her elementary school by an unauthorized private third party who sexually assaulted her before returning her to school. Doe's parent and grandparent filed suit against the county, school district, and various other officials, alleging claims under § 1983, 42 U.S.C. § 1985, and Mississippi tort law. Because the plaintiffs' constitutional claim against the defendants was based on the private third party's sexual assault of Doe, the Fifth Circuit found that her constitutional claim could proceed only if the school district "had a constitutional duty to protect Jane from non-state actors," which can only arise "if there is a special relationship." *Id.* at 855. The court held that a public school does not have a special relationship with its students requiring the school to ensure the students' safety from private actors. *Id.* at 857. "Without a special relationship, a public school has no constitutional duty to ensure that its students are safe from private violence." *Id.* at 858.

The special relationship doctrine, therefore, "is properly invoked in cases involving harms inflicted by third parties, and it is not applicable when it is the conduct of a state actor that has allegedly infringed a person's constitutional rights." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d

521, 529 (5th Cir. 1994). Because Plaintiffs in this case are complaining about the actions of RRISD school officials, not a private third party, the special relationship doctrine does not apply.

Nevertheless, the Fifth Circuit has held that school children have "a substantive due process right to bodily security" and to be free from physical and sexual abuse from school officials while at school. *Taylor*, 15 F.3d at 454. Plaintiffs rely on *Taylor* to support their argument that RRISD violated C.O.'s right to bodily integrity by mistakenly sending her home on the bus. In *Taylor*, the court held that a student was deprived of her Fourteenth Amendment right to bodily integrity when she was sexually abused by her teacher. 15 F.3d at 451-52. *Taylor* involved "egregious and outrageous" conduct involving a teacher's sexual molestation of a student. *Id.* at 455.

In another case, *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir. 1987), the court found that tying a second-grade student to a chair for nearly two school days violated the student's substantive due process right "to be free of state-occasioned damage to a person's bodily integrity." *Id.* The court also has held that the infliction of "corporal punishment in public schools 'is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.'" *Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990) (quoting *Woodard v. Los Fresnos Indep. Sch. Dist.*, 732 F.2d 1243, 1246 (5th Cir. 1984)).

To determine whether the facts Plaintiffs allege amount to a violation of C.O.'s right to bodily integrity, which would constitute a substantive due process violation, the Court must consider whether the acts that RRISD inflicted on her "shock the conscience." *See M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 251 (5th Cir. 2018). This standard is satisfied where "the conduct was intended to injure in some way unjustifiable by any government interest, or in some circumstances if it resulted from deliberate indifference." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906

(2018) (internal quotation marks omitted). Consistent with these principles, the Fifth Circuit requires the plaintiff to show, at a minimum, that the state actor acted with deliberate indifference, which is "a significantly high burden for plaintiffs to overcome." *Abbott*, 907 F.3d at 251-52. To show deliberate indifference, the plaintiff must allege facts indicating that the state actor consciously disregarded a known and excessive risk to the victim's health and safety. *Id.* at 252. The state actor's conduct "must amount to an intentional choice, not merely an unintentionally negligent oversight." *James v. Harris Cnty.*, 577 F.3d 612, 617-18 (5th Cir. 2009). "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

As noted above, scenarios where the Fifth Circuit has found a violation of bodily integrity by school officials have involved particularly egregious behavior, including a teacher sexually assaulting a student, *Taylor*, 15 F.3d at 451-52, and a teacher tying a second-grade student to a chair for two days, *Ysleta*, 817 F.2d at 305. Conversely, courts in this circuit have refused to find a violation of a student's right to bodily integrity in scenarios in which:

> (1) a student was killed while driving the teacher's all-terrain vehicle on the teacher's property during school hours;[3]
>
> (2) a teacher held a preschool child in her lap while typing "vulgar and threatening messages" that the preschool student could not understand;[4]
>
> (3) school personnel restrained an emotionally disabled student on multiple occasions when the student was being destructive and attempting to harm herself and others;[5]
>
> (4) a student suffered a brain injury when a coach sent him in to resume play in a football game five minutes after being knocked unconscious;[6]

---

[3] *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 198-200 (5th Cir. 2015).

[4] *Morris v. Dearborne*, 181 F.3d 657, 666 (5th Cir. 1999).

[5] *Doe v. S & S Consol. I.S.D.*, 149 F. Supp. 2d 274, 289-91 (E.D. Tex. June 26, 2001).

[6] *Myers v. Troup Indep. Sch. Dist.*, 895 F. Supp. 127, 130 (E.D. Tex. 1995).

> (5) a student committed suicide on a school campus during the school day;[7]
>
> (6) a student with spina bifida sustained multiple injuries at school when the school allegedly failed to keep him safe;[8]
>
> (7) a first-grade student was struck and killed by a car when a teacher left a playground gate open and the child wandered into the road;[9] and
>
> (8) a student was injured while using a table saw from which the shop class teacher had removed a safety guard.[10]

In sum, the Fifth Circuit generally has found a violation of a student's right to bodily integrity only when a school official inflicted extreme or outrageous physical harm on the student. Courts have been reluctant to find a due process violation in cases where it appears that a child was physically harmed, or killed, due to a school official's negligence.

Here, Plaintiffs have not alleged that C.O. suffered any physical harm; nor have they alleged facts sufficient to overcome the high burden of showing that RRISD acted with deliberate indifference. *Abbott*, 907 F.3d at 251-52. RRISD's alleged actions are not so egregious as to shock the conscience. Although RRISD's employees may have been negligent in mistakenly sending C.O. home on the bus, "negligence alone will not trigger the due process protections of the Fourteenth Amendment." *Roman*, 1995 WL 449639, at *2.

Plaintiffs have not pled facts showing that RRISD or its employees violated C.O.'s right to bodily integrity. Therefore, Plaintiffs have failed to identify a constitutional violation.

### 2.  Municipal Liability

As stated above, municipal liability under § 1983 requires proof of a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy. *Pineda*, 291 F.3d

---

[7] *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1002-03 (5th Cir. 2014).

[8] *David G. v. Austin Indep. Sch. Dist.*, 40 F.3d 386, 1994 WL 652589, at *4-5 (5th Cir. Nov. 10, 1994).

[9] *Roman v. Whitmire*, 62 F.3d 396, 1995 WL 449639, at *1-2 (5th Cir. July 11, 1995).

[10] *Voorhies v. Conroe Indep. Sch. Dist.,* 610 F. Supp. 868, 873 (S.D. Tex. 1985).

at 328. "An offending policy may be an official policy adopted and promulgated by the unit of government, or a 'persistent, widespread practice of [government] officials or employees' that is 'so common and well settled as to constitute a custom that fairly represents [governmental] policy.'" *Rodriguez v. CHRISTUS Spohn Health Sys. Corp.*, 874 F. Supp. 2d 635, 643 (S.D. Tex. 2012) (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992)).

The "official policy" requirement "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479. The policymaker is liable if an official policy or custom itself is unconstitutional, or the policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted).

RRISD argues that Plaintiffs' § 1983 claim should be dismissed because Plaintiffs are attempting to hold RRISD liable under a respondeat superior theory. Dkt. 36 at 9-10. RRISD emphasizes that Plaintiffs have failed to allege any facts showing that an RRISD official policy or custom was the moving force behind the alleged constitutional violations. *Id.* RRISD contends that Plaintiffs' allegations relate to actions of individual RRISD employees, but that Plaintiffs' Third Amended Complaint lacks "any specific or credible assertion that the RRISD Board of Trustees ever adopted an official policy or acquiesced to a widespread District custom that caused C.O-M to be deprived of a Constitutional right." *Id.* at 9.

Plaintiffs respond that they are not relying on a respondeat superior theory. Rather, they allege that RRISD "had an actual practice and custom of conscious and deliberate indifference to the federal law, federal rules, directives from federal executive agencies, and their own School Board policies and procedures in regard to maintaining the safety of C.O-M. when it was their duty to keep her safe." Dkt. 35 ¶ 49. Plaintiffs also contend that the RRISD School Board failed to supervise and train staff to comply with federal law, federal rules, directives from federal executive agencies, and their own School Board policies and procedures. *Id.* ¶¶ 54, 55, 49. The Court considers each of Plaintiffs' arguments in turn.

### a.   Custom of Deliberate Indifference to Maintaining Student Safety

Under Texas law, the policymaker for a school district is the school board. *See Rivera*, 349 F.3d at 247; TEX. EDUC. CODE § 11.151(b). Plaintiffs' allegations include specific actions of the TES principal, TES teachers, and a RRISD bus driver. *See* Dkt. 35 ¶¶ 20-21, 26, 29, 34-35, 40. None of those actors are policymakers for the school district. *See Rivera*, 349 F.3d at 247 (principal); *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001) (principal); *Teague ex rel. C.R.T. v. Texas City Indep. School Dist.*, 386 F. Supp. 2d 893, 896 (S.D. Tex. 2005) (principal, teachers, and other high school staff members), *aff'd*, 185 Fed. App'x 355 (5th Cir. 2006). To succeed on their municipal liability argument, Plaintiffs must show that the final policymaker, the RRISD School Board, adopted a policy or custom that was the moving force behind the alleged constitutional violation. *Rivera*, 349 F.3d at 247.

Plaintiffs argue that "the three instances of the failure of School District staff to keep C.O.-M. safe," combined with RRISD's knowledge of a class action lawsuit alleging similar constitutional violations, were "sufficient to create such a custom, policy or practice theory of liability." Dkt. 42 ¶ 31. Where a plaintiff relies on prior incidents to prove a pattern or custom, the prior incidents

"must have occurred for so long or so frequently that the course of conduct warrants the attribution to the [school district] that the objectionable conduct is the expected, accepted practice" of school district employees. *Ayon v. Austin Indep. Sch. Dist.*, No. 1:19-CV-586-RP, 2020 WL 1536383, at *5 (W.D. Tex. Mar. 31, 2020). Plaintiffs have not pled sufficient facts to establish that RRISD had a custom of violating students' rights by leaving them unattended in public areas. *Cf. Peterson v. Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (affirming holding that 27 complaints over four years were insufficient for pattern of excessive force); *Pineda*, 291 F.3d at 329 (holding that eleven incidents did not support a pattern of unconstitutional warrantless entry).

### b.   Failure to Train

Plaintiffs' remaining argument focuses on the RRISD School Board's alleged failure to supervise and train staff to comply with federal law, federal rules, directives from federal executive agencies, and the school board's own policies and procedures. Dkt. 35 ¶¶ 54, 55, 49. A plaintiff must show that the failure to train was a result of the policymaker's deliberate indifference to an individual's constitutional rights. *Connick*, 563 U.S. at 61. To establish that the policymaker's alleged failure to train constitutes deliberate indifference, the plaintiff usually must show a pattern of similar constitutional violations by untrained employees. *Id.* at 62.

Plaintiffs argue that the School Board had a custom of failing to train and supervise its employees, but do not identify any specific law, rule, directive, or policy under which the School Board should have trained and supervised the RRISD employees involved in C.O.'s alleged harm. Instead, Plaintiffs merely argue that RRISD did not have "a program to keep young children safe and supervised at school." Dkt. 42 ¶ 32.

Plaintiffs make conclusory allegations that the School Board was aware of a pattern or custom of RRISD employees failing to keep children safe, in violation of their constitutional rights, and

should have trained employees in appropriate procedures. *See* Dkt. 35 ¶¶ 45, 54-55; Dkt. 42 ¶¶ 1-3, 18-19, 30-31. For example, Plaintiffs allege that Mendoza had two meetings with the TES principal about failures in the check-out procedure, and at both he acknowledged that "[t]his happens from time to time." Dkt. 35 ¶¶ 21, 40, 42; Dkt. 42 ¶¶ 18, 36-37. Plaintiffs' allegation that the TES principal was aware that check-out procedures occasionally failed does not establish that the School Board was aware of the occasional failures. *See Doe v. Marion Indep. Sch. Dist.*, No. SA-17-CV-01114-OLG, 2018 WL 6272036, at *5 (W.D. Tex. Nov. 29, 2018), *report and recommendation adopted*, Dkt. 50 (Mar. 20, 2019); *Doe v. Marion Indep. Sch. Dist.*, No. SA-17-CV-01114-OLG (W.D. Tex. Mar. 20, 2019) (finding allegations that only school employees were aware of a constitutional violation insufficient to impose municipal liability on school district).

To succeed on the failure to train argument, Plaintiffs must show that the School Board was deliberately indifferent in its failure to train. To do so, the School Board must have had notice of the need to train. *See Yara v. Perryton Indep. Sch. Dist.*, 560 F. App'x 356, 360 (5th Cir. 2014); *Marion*, 2018 WL 6272036, at *4-5. Plaintiffs have not sufficiently pled that the RRISD School Board had notice of the alleged failures in check-out procedures at TES before the events giving rise to this lawsuit. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Finally, Plaintiffs argue that even if no pattern of constitutional violations exists, this case falls under the single-incident exception. That exception recognizes that in a limited set of cases, a plaintiff, unable to show a pattern of constitutional violations, may establish deliberate indifference by "showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge v. St. Tammany Par.*, 336 F.3d 363,

373 (5th Cir. 2003). The single incident exception is a narrow one that the Fifth Circuit has been "reluctant to expand." *Id.* "Accordingly, the exception will apply only where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Id.* Because Plaintiffs have failed to allege a constitutional violation, they cannot meet this high bar.

### 3.   Conclusion as to Plaintiffs' Section 1983 Claim

In sum, Plaintiffs' allegations are insufficient to show that RRISD had a policy of indifference to the safety of its students or a custom of failing to train its employees. Plaintiffs thus have failed to allege a plausible § 1983 claim against RRISD. Accordingly, RRISD's Motion to Dismiss should be granted as to Plaintiffs' § 1983 claim.

### B.  Remaining Claims

Because the Court recommends that Plaintiffs' § 1983 claim be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. District courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, and supplemental jurisdiction over all other claims so related that they form part of the same case or controversy. 28 U.S.C §§ 1331, 1367. A district court may decline to exercise supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C § 1367(c); *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). No single statutory factor is dispositive; whether to retain supplemental jurisdiction requires a balancing test. *See Mendoza*, 532 F.3d at 346. In addition to the statutory factors, courts also consider common law factors, including judicial economy, convenience, fairness, and comity. *See id.* at 347.

The district court has wide discretion to remand or dismiss state law claims when the federal claims to which they are pendent are dismissed. *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 296 (5th Cir. 1998). The Fifth Circuit generally favors dismissal when all federal claims against a defendant have been dismissed and only pendant state law claims remain. *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).

The undersigned recommends dismissal of the only federal claim Plaintiffs assert. Considering all of the above factors, the undersigned also recommends that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state claims. Accordingly, RRISD's Motion to Dismiss the state law claims should be granted for lack of subject matter jurisdiction.

## IV.    YMCA's Motion to Dismiss

YMCA argues that the Court has supplemental jurisdiction over Plaintiffs' claims against it only through Plaintiffs' § 1983 claim against RRISD. YMCA further contends that Plaintiffs have failed to state a valid § 1983 claim against RRISD. After the Court dismisses the § 1983 claim against RRISD, YMCA submits, the Court should decline to exercise supplemental jurisdiction over the state tort claims against YMCA.

The Court agrees. As discussed above, the Fifth Circuit generally favors dismissal when all federal claims have been dismissed and only pendant state law claims remain. *Parker & Parsley,* 972 F.2d at 585. Considering the statutory and common law factors discussed above, the undersigned finds that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state claims. Accordingly, YMCA's Motion to Dismiss should be granted for lack of subject matter jurisdiction.

**V.   Plaintiffs' Request for Leave to Amend**

In their Responses, Plaintiffs ask that the Court grant leave to amend their pleadings if the Court finds them deficient. Dkt. 41 at 14; Dkt. 42 ¶ 7. Courts should freely grant leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith. *Mayeaux v. La. Health Serv. & Indem. Co*., 376 F.3d 420, 425 (5th Cir. 2004). Amendment is futile where it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

Plaintiffs have amended their pleadings three times. Dkts. 6, 23, 35. The Court finds that any further amendment would be futile because Plaintiffs' allegations do not rise to the level of a constitutional violation. At most, Plaintiffs allege that RRISD employees may have been negligent in putting C.O. on the school bus instead of taking her to the YMCA after-school program. However, "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). As one court has stated: "It is a great leap from the principal's office to the federal courthouse, and, in order to invoke federal jurisdiction, plaintiffs are required to demonstrate fact issues indicating not merely that they may have gotten a 'raw deal,' but that their constitutional rights may have been violated." *J.W. v. Desoto Cnty. Sch. Dist.*, No. 09-CV-00155-MPM-DAS, 2010 WL 4394059, at *3 (N.D. Miss. Nov. 1, 2010). Courts have a limited role in reviewing the decisions of school officials:

> The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

*Wood v. Strickland*, 420 U.S. 308, 326 (1975), *abrogated in part on other grounds*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Accordingly, Plaintiffs' request for leave to amend should be denied.

## VI.    Recommendation

The undersigned **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendant Round Rock Independent School District's Motion to Dismiss (Dkt. 36). The undersigned **RECOMMENDS** that the Motion to Dismiss under Rule 12(b)(1) should be **DENIED**, but that the Motion to Dismiss under Rule 12(b)(6) should be **GRANTED**.

The undersigned **FURTHER RECOMMENDS** that the District Court **GRANT** Defendant YMCA of Greater Williamson County's Motion to Dismiss (Dkt. 37).

The undersigned **FURTHER RECOMMENDS** that District Court **DISMISS** Plaintiffs' lawsuit with prejudice and without leave to amend.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to

proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

   **SIGNED** on August 26, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE